UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>JESSIE MENDOZA,<br><br>  Defendant. | Case No. 1:21-cr-00245-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is the question of whether the Defendant Jessie Mendoza violated the terms and conditions of his supervised release. The Court held an evidentiary hearing on November 9, 2023, and took the matter under advisement. Upon review, and for the reasons set forth below, the Court finds the Government has met its burden of proving Mendoza violated the terms and conditions of his release.

## II. BACKGROUND

On September 23, 2021, Mendoza's probation was transferred to the District of Idaho from the District of Nevada. Dkt. 1.

On February 8, 2023, United States Probation and Parole ("Probation") filed a Petition on Supervised Release. Dkt. 3. On August 11, 2023, an Amended Petition was filed. Dkt. 7. The Amended Petition, which is the operative petition, alleges seven violations against Mendoza. *Id*.

On November 9, 2023, a hearing was held on the alleged violations. Dkt. 29. At the

MEMORANDUM DECISION AND ORDER - 1

hearing, Mendoza admitted to the first five violations contained in the Amended Petition.[1] In light of these admissions, the Government dismissed allegation seven.[2] The Court then proceeded with an evidentiary hearing on violation number six,[3] as Mendoza was contesting that allegation.

Over the course of the roughly two-hour hearing, two Probation officers testified, and ten exhibits were admitted. Dkt. 29. Mendoza objected to the admission of a group of exhibits (Government's Exhibit 8) that the Government relied upon heavily to support the allegation. The Court allowed Mendoza to have a standing objection to the admission of said exhibits and gave the parties an opportunity to brief the objections—as well as closing arguments—after the conclusion of the hearing. The parties obliged (Dkts. 30, 31) and the matter is now ripe for review.

### III. LEGAL STANDARD

A term of supervised release may be revoked by the Court "if it finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. Section 3583(3); *see also United States v. Lomayaoma,* 86 F.3d 142, 147 (9th Cir.1996) ("[F]or purposes of a supervised release revocation hearing, the district court need only conclude that a preponderance of the evidence supports" revocation).

Ordinarily, "there is sufficient evidence to support a conviction if, viewing the

---

[1] These violations include: (1) unlawful use of a controlled substance; (2) failure to make restitution; (3) failure to report to the Probation officer; (4) failure to follow the instructions of the Probation officer; and (5) failure to provide urinalysis samples as required. Dkt. 7, at 1–4.

[2] This violation alleged Mendoza failed to notify Probation of a change in his residence. Dkt. 7, at 4.

[3] As will be detailed below, violation number six alleges Mendoza committed a crime. Dkt. 7, at 4.

MEMORANDUM DECISION AND ORDER - 2

evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of a violation." *United States v. Weber,* 320 F.3d 1047, 1050 (9th Cir. 2003) (cleaned up).

The rules of evidence do not apply to evidentiary hearings related to the revocation of supervised release. Fed. R. Evid. 1101(d)(3). In *Morrissey v. Brewer*, 408 U.S. 471, 488-89 (1972), the Supreme Court ruled that, during revocation hearings, defendants do not enjoy the same procedural protections provided during an adversary criminal trial. The Supreme Court recommended a flexible process be employed "to consider evidence[,] including letters, affidavits, and other material, that would not be admissible in an adversary criminal trial." *Id.* at 489. There is no singular answer to the amount of process a defendant is due during revocation proceedings, but the Court should allow "such procedural protections as the particular situation demands." *Id*. at 481.

## IV. DISCUSSION

One of Mendoza's mandatory conditions of supervised release is that he "not commit another federal, state, or local crime." Dkt. 1-2, at 3.[4] Allegation number six of

---

[4] Mendoza puts forth a threshold argument that he did not have notice of the conditions of his supervised release. He so claims because Probation was unable to produce a signed copy of the Amended Judgment from Nevada. Mendoza argues that, absent evidence he signed the Amended Judgment, he was unaware of the terms and conditions of his supervised release and cannot be held liable for any violations. This argument is unavailing for multiple reasons. First, Probation testified that Mendoza's prior probation officer indicated Mendoza had, in fact, signed the newest judgment from Nevada. Probation readily admits they cannot locate this document but credits the failure to a clerical error. Second, the term and condition that a supervisee shall not commit another crime is not unique. It is a *mandatory* condition of supervised release. It is also the law. To claim the failure to provide notice that criminal activity is not allowed—and, consequently, that one cannot be held liable for such activity—is disingenuous. Third, and most importantly, Mendoza admitted to five violations. Those violations were based on mandatory, standard, and special conditions set forth in the Amended Judgment. If Mendoza did not have notice of those conditions, he should not have admitted to anything, let alone five separate and distinct violations. In short, the Court finds Mendoza was sufficiently on notice that he could not commit a crime while on supervised release.

MEMORANDUM DECISION AND ORDER - 3

the Amended Petition alleges that "between December of 2022 and August of 2023, [Mendoza] committed the crime of Distribution of a Controlled Substance, a felony in violation of 21 U.S.C. § 841(a)(1), as evidenced by text messages located on his cell phone." Dkt. 7, at 4.

In support of this allegation, the Government sought to admit into evidence numerous exhibits—namely Government's Exhibits 8A through 8G—that depict Facebook and text messages located on a phone belonging to Mendoza. Those messages discuss the purchase and sale of controlled substances. Mendoza objected to the admission of these exhibits for a variety of reasons, but primarily hearsay and the right to confrontation. The Court will address these objections at the outset as the determination of whether Government's Exhibits 8A through 8G are admissible bears directly upon the Court's finding that Mendoza violated this specific term and condition of supervised release.

### A. Objections to Exhibits

Mendoza alleges the evidence contained in Government's Exhibit 8 includes impermissible hearsay. As a result, he contends he must be allowed to confront the witnesses who made the statements contained in Exhibit 8 to ascertain their veracity. There are a few problems with this argument. Namely, the strict rules regarding hearsay and the right to confrontation do not apply in this context. Moreover, most of the statements in Exhibit 8 are statements made by Mendoza himself and fall under an

exception to the hearsay rule.[5] The Court will briefly review each of these reasons and why, as a result, Mendoza's objection must be overruled.

First, Mendoza readily admits that the Federal Rules of Evidence *do not* apply to proceedings involving the revocation of supervised release. Dkt. 30, at 2. *See also* Fed. R. Evid. 1101(d)(3). Thus, hearsay evidence can be considered. Similarly, Mendoza accurately recognizes that the confrontation clause does not apply in revocation proceedings. *United States v. Hall*, 419 F.3d 980, 985 (9th Cir. 2005). Thus, he does not have a right to confront witnesses whose statements are used against him. These principles aside, Mendoza maintains he still has due process rights, and that the Court must afford him the same.

As mentioned above, in *Morrissey*, the United States Supreme Court defined certain minimum due process requirements for parole revocation proceedings. One of those rights is the right to confront and cross-examine adverse witnesses, unless the government shows good cause for not producing the witnesses. 408 U.S. at 489; *see also* Fed. R. Crim. P. 32.1(a)(2)(D) (noting that at a revocation hearing, the defendant should have "an opportunity to question adverse witness[es], unless the judge determined that the interest of justice does not require the witness to appear"). Thus, the Court must weigh the releasee's interest in his constitutionally guaranteed right to confrontation against the Government's good cause for denying it. *See United States v. Walker,* 117 F.3d 417, 420 (9th Cir.1997). Here, the Court finds Mendoza is not entitled to confront any witnesses

---

[5] In like manner, statements made by others *to Mendoza* are also covered under a hearsay exception.

because the statements he objects to are not hearsay in the first instance.

Again, even assuming arguendo that the rules of evidence applied at the revocation hearing, the statements from Exhibit 8 would be allowed because they are not hearsay. To help explain, the Court must briefly review Exhibit 8.

Exhibit 8—which contains seven subparts: 8A though 8G—are screenshots from Mendoza's cellphone depicting conversations related to the acquisition of controlled substances. One is a text message conversation. The remaining are Facebook conversations.

Before the Court continues with its hearsay analysis, it must address another threshold argument raised by Mendoza that ties into this discussion and, ultimately, the outcome of this dispute.

Mendoza claims there is no way to tell whether he is even the author of the messages pulled from his phone and depicted in Government's Exhibit 8. His counsel went to great lengths at the hearing to reiterate this point, even going so far as to ask witnesses to refer to the messages not as originating from, or coming to, "the Defendant," but originating from, or coming to, "the Defendant's phone."[6] His counsel repeatedly emphasized there was no way to tell that Mendoza himself sent these messages because the messages were sent—again, for the most part—via Facebook which can be accessed anywhere.

---

[6] Neither party ordered an official transcript of the revocation hearing. Accordingly, the transcript is not *currently* part of the record. Nevertheless, the Court has carefully reviewed the unofficial transcript, the testimony, and the exhibits, and its representations herein of the statements made, or exhibits shown, during the hearing are accurate.

MEMORANDUM DECISION AND ORDER - 6

Later in this decision the Court will discuss the Government's burden of proof and explain why it must meet the lower "preponderance" standard under the circumstances, but that same principle applies to the underlying evidence as well.

The Court understands Mendoza's argument that, because these messages were sent (mostly) via Facebook, there is the possibility that someone other than Mendoza hacked into his Facebook account and *sent* the messages from another location, and that such messages were simply *accessible* on his phone. But that seems extremely unlikely for many reasons. The Court will start broadly. First, the number associated with the cellphone containing the conversations outlined in Exhibit 8 is the number on record with Probation for Mendoza. Second, that specific phone was taken from Mendoza the day of his arrest. Third, the phone's general settings list Mendoza's name as the owner. Fourth, the Facebook profile (logged into on Mendoza's phone via the Facebook messaging app) contains a picture of Mendoza. Thus, it is clear the phone belongs to Mendoza. And there is no evidence in the record that Mendoza lost his phone, misplaced his phone, or shared his phone with any other individuals. All of this evidence cuts against Mendoza's argument that he was not involved in these conversations; particularly as it pertains to the text message conversation in Exhibit 8G.

But even having determined the *phone* belonged to Mendoza, the question remains: couldn't a hacker have gained access to Mendoza's Facebook account from another location, had these conversations without Mendoza's knowledge, and such conversations appear on Mendoza's phone only because he was simultaneously logged into his Facebook account on that device? Again, unlikely. During one of the Facebook

MEMORANDUM DECISION AND ORDER - 7

conversations (Exhibit 8F) a video is sent. The person in the video is Mendoza. During the same Facebook conversation, a meeting location in Nampa, Idaho, is discussed. Mendoza lives in Nampa, Idaho. In a subsequent conversation with the same individual, a more specific location, the "Station Apartments," is discussed. Mendoza's listed address with Probation is at the Station Apartments. And finally, in another conversation, the sender discusses being on federal probation and using a urinalysis defeating device to thwart a drug test. Mendoza is on federal probation. He is required to submit to randomized drug testing. And when Mendoza was arrested, a urinalysis defeating device was found in his vehicle. In fact, one of the sub-violations Mendoza already pleaded guilty to (violation 5(k)) alleges he was in possession of such a device. Simply put, there is sufficient evidence to show Mendoza made the statements in Exhibit 8. He was the sender of the messages. Mendoza's conjecture aside, there is simply no evidence that the circumstances surrounding the messages are the result of either a conspiracy against him[7] or a situation where his phone or account was hacked by another individual.

The Court returns to its hearsay discussion. As just explained, the phone at issue belonged to Mendoza. The messages gleaned from that phone were sent by Mendoza. Accordingly, the Government's use of those messages *against* Mendoza cannot constitute hearsay because they are his own statements. Fed. R. Evid. 801(d)(2)(A). *See also United States v. Ortega,* 203 F.3d 675, 682 (9th Cir.2000) ("Self-inculpatory statements, when offered by the government, are admissions by a party-opponent and are therefore not

---

[7] Mendoza goes so far as to opine that the conversations may have been generated by "social media bots" as opposed to "real persons." Dkt. 30, at 10.

hearsay . . . .") (cleaned up). Furthermore, the responses from other individuals to Mendoza during those conversations are not hearsay because the Government is not providing them for the truth of the matter asserted, but simply for context. *See* Fed. R. Evid. 801(c)(2); *see also United States v. Barragan*, 871 F.3d 689, 705 (9th Cir. 2017) (holding that an informant's statements were not hearsay "because they were offered only for context, not for the truth of the matter asserted").[8]

In conclusion, because the rules of evidence do not apply in revocation hearings, the Court *could* have allowed the contested statements in as a discretionary matter. However, even reviewing them under the rules of evidence, the Court finds they are not hearsay and are admissible. As a result, Mendoza is not entitled to confront any of the individuals who authored the text and Facebook messages in Exhibit 8. The objection is OVERRULED.

**B. Analysis**

Having overruled Mendoza's objection, the Court turns to the question of whether the Government has proven allegation number six: that Mendoza committed a crime.

The Government specifically alleges that Mendoza is guilty of distributing a controlled substance in violation of 21 U.S.C. § 841(a)(1).[9] Here, there is evidence that

---

[8] Finally, Mendoza relies heavily on a Ninth Circuit case, *United States v. Comito*, 177 F.3d 1166 (9th Cir. 1999), for the proposition that he must be allowed to question those individuals whose statements are being used against him. This reliance is misplaced because in *Comito*, the only evidence the district court relied upon came from a probation officer's testimony regarding what Comito's girlfriend had told him (i.e. it was straight hearsay). 177 F.3d at 1171. The Ninth Circuit found the denial of Comito's right to confrontation was erroneous and that the district court should have allowed Comito the opportunity to question his girlfriend (or at the very least, it should have required the Government to more fully explain why he should not be afforded that right). *Id.* at 1172–73. This case is not squarely on point because—as just explained—the evidence at issue in this case is not hearsay.

[9] The elements of a violation of 21 U.S.C. § 841(a)(1) are: (1) the defendant knowingly distributed a controlled substance; and (2) the defendant knew that it was a controlled substance or some other federally controlled substance. *See* Ninth Circuit Model Criminal Jury Instruction 12.4 (2023).

illustrates, more likely than not, that Mendoza did, in fact, commit this crime.

Probation testified, based upon professional training and experience, that many of the terms used in the messages between Mendoza and other individuals referenced controlled substances. For example, Mendoza used coded words for fentanyl, powder cocaine, cocaine, methamphetamine, and Xanax. *See generally* Exhibit 8. He also used slang phrases in reference to narcotic suppliers and not wanting to drive with narcotics in his vehicle. Exhibit 8C, 8F. The messages detail varying amounts and quantities of the coded products and discuss utilizing a cash app for payment that is commonly used by dealers and addicts to transfer money for drugs. Exhibit 8C, 8G. Also of note, most if not all, of the people Mendoza communicated with are known to law enforcement and have prior drug-related convictions.

This evidence is sufficient to carry the Government's burden. The Court is not implying the Government's case is iron-clad. But as noted above in the legal standard section, the Government does not have a heightened burden of proof when it comes to revocation proceedings; instead, its burden is "more likely than not." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). *See also Lolong v. Gonzales*, 484 F.3d 1173, 1185 (9th Cir. 2007) ("[T]he more likely than not standard [] by definition looks to the 51 percent mark."). Here, the Court finds it more likely than not Mendoza committed a crime and that that crime was distribution of a controlled substance.

To the Court's knowledge, no federal, state, or local authority has charged Mendoza (or any of the other individuals in the messages) with any crime. But again,

such is not a pre-requisite to the Court's finding today. *See e.g. United States v. Garcia-Cartagena*, 953 f.3d 14, 15 (1st Cir. 2020) ("If a defendant on supervised release commits a new crime, even if they're not convicted (i.e., found guilty beyond a reasonable doubt after a full-dress trial or plea), a federal district court may find they more-likely-than-not committed it, revoke their supervised release, and send them back to prison."); *United States v. Williams*, 741 F.3d 1057, 1060 (9th Cir. 2014) (the distinction between committed and convicted "often disfavors individuals on supervised release who, although not convicted of another crime beyond a reasonable doubt, may nevertheless be subject to revocation of supervised release by evidence establishing by a preponderance of the evidence that they committed another crime"); *United States v. Burton*, 110 F. App'x 692, 694 (7th Cir. 2004) ("A conviction is not a prerequisite to the revocation of supervision; a district court may revoke supervised release when "reasonably satisfied" that the defendant has violated a condition of his release.").

In sum, while the evidence in this case may or may not prove a crime beyond a reasonable doubt or to a standard of clear and convincing, neither is required. The Government's burden is to establish that Mendoza more likely than not distributed controlled substances. The Court is satisfied that it has done so here. Accordingly, the Court finds Mendoza is in violation of a mandatory term and condition of his release.

## V. CONCLUSION

The Court has considered the testimony and the exhibits presented during the evidentiary hearing. It overrules Mendoza's objection based on hearsay and confrontation and fully admits Government's Exhibit 8. It also finds, based upon the available evidence,

MEMORANDUM DECISION AND ORDER - 11

that the Government has met its burden as to violation six and that Mendoza violated the mandatory condition that he not commit any other federal, state, or local crime.

## VI. ORDER

IT IS HEREBY ORDERED that final revocation hearing on supervised release will be set before the undersigned District Judge on **February 15, 2024, at 10:00 a.m.** in the U.S. Courthouse located in Boise, Idaho.

DATED: January 29, 2024

David C. Nye
Chief U.S. District Court Judge